UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
*Electronically Filed*

| | |
|---|---|
| MORGAN BOYKEN, as Executrix of <br> The Estate of Sonia Marksberry, deceased <br><br>       Plaintiff <br><br> -vs- <br><br> KENTUCKY DREAM HOMES, LLC, <br> AND DUSTIN EWING; <br><br>       Defendants. | ) <br> ) <br> ) <br> ) Case No. 4:23-cv-138 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## FIRST AMENDED COMPLAINT WITH JURY DEMAND

Morgan Boyken, as Executrix of the Estate of Sonia Marksberry, deceased ("Plaintiff"), for her First Amended Complaint against Kentucky Dream Homes, LLC ("KDH") and Dustin Ewing ("Ewing") (collectively, "Defendants") states as follows:

## THE PARTIES

1. Mrs. Morgan Boyken is a citizen and resident of Ohio County, Kentucky.

2. On October 3, 2023, Mrs. Boyken was appointed as Executrix of the Estate of Sonia Marksberry, who unexpectedly died on Wednesday, March 15, 2023.

3. At all times relevant to the events set forth in this First Amended Complaint, KDH is and was a limited liability company owned by Ewing which was organized under Kentucky law, doing business in Kentucky under the assumed name "Family Dream Homes," and with its principal office located at 3615 U.S. Hwy. 60 East, Owensboro, Kentucky 42303.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

5. This Court has jurisdiction over KDH because it is a limited liability company organized under the laws of Kentucky and doing business in the Commonwealth.

6. This Court has jurisdiction over Ewing because, at all times relevant to the events set forth in this First Amended Complaint, Ewing was the owner of KDH, and the claims asserted against him arise from conduct he carried out in Kentucky which caused injury in Kentucky.

7. Venue is proper in the Western District of Kentucky, Owensboro Division, pursuant to 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

8. KDH is or at all times relevant to the allegations in this First Amended Complaint was a business that operates a store where KDH's salespersons sell prefabricated modular and/or manufactured homes to customers.

9. KDH, at all times relevant to the allegations in this First Amended Complaint, operated three stores in Kentucky: one in Owensboro, one in Bowling Green, and one in Paducah.

10. At all times relevant to this First Amended Complaint, KDH's Chief Executive Officer was Dustin Ewing, the General Manager of KDH's Owensboro store was Mason Quick, KDH's Regional Vice President was Daryl Stone, and the attorney who performed work on a regular basis for KDH's Owensboro store was Thomas Carroll.

11. Prior to her death, and from on or about September 3, 2017, until on or about January 20, 2023, Sonia Marksberry worked for KDH as a salesperson and experienced great success as a salesperson for KDH.

12. On or about August 17, 2021, Ewing, KDH's Chief Executive Officer, sent an email to Mason Quick stating, among other things: "When a salesperson leaves the company, they do

not get paid on deals that are not completed," thereby changing Defendant's generally accepted practice of paying commissions to outgoing employees.

13. On or about August 17, 2021, Mason Quick forwarded Ewing's email concerning commission payments to Sonia Marksberry and other salespersons.

14. Dustin Ewing's email about KDH's commission-pay policy greatly concerned certain of KDH's salespersons, including Sonia Marksberry, and those concerns, coupled with other concerns regarding KDH's pay policies generally, caused Sonia Marksberry and other of KDH's salespersons to file a lawsuit against KDH for unpaid wages.

15. As a result of Sonia Marksberry's involvement in the lawsuit (Civil Action No. 22-CI-00020, filed in Daviess Circuit), and, in particular, the fact that she was bringing claims against KDH for violating Kentucky's Wage & Hour Act, KDH retaliated against Sonia Marksberry.

16. Indeed, almost immediately after learning that Sonia Marksberry had asserted wage and hour claims against KDH, KDH's management, including Dustin Ewing, Daryl Stone, Mason Quick, and its in-house attorney, Thomas Carroll, began retaliating against Sonia Marksberry and otherwise treating her differently. Examples of KDH's retaliatory conduct include:

   a. KDH's attorney, Thomas Carroll, met with Sonia Marksberry, confirmed that she had asserted wage claims against KDH, and attempted to intimidate her and persuade her to drop the lawsuit; when his efforts were unsuccessful, Thomas Carroll had a private meeting with Mason Quick, and, upon his return, Thomas Carroll advised Ms. Marksberry that she was being written up for, among other things, taking a "long lunch" break without permission, even though she secured permission to take this break from Mason Quick;

   b. Sonia Marksberry came into work and found that someone had left empty boxes on the chairs in her office, insinuating to her that it was time for her to pack up and leave;

    c. Mason Quick met with Sonia Marksberry and advised her that he had been told by upper-management to write her up for poor performance as indicated by a performance review; Mason Quick insinuated to Sonia Marksberry during this meeting that the reason he was writing her up was because she asserted wage and hour claims against KDH; neither Mason Quick nor anyone else who works for KDH actually completed a documented performance review prior to administering this write-up;

    d. Sonia Marksberry was told that a sick day which she had recently taken would count against her vacation days if she did not turn in a doctor's note evidencing her sickness; this was the first-time during Ms. Marksberry's long tenure with KDH that she had been asked for a sick note and, to her knowledge, no other employee has ever been asked to turn in a sick note;

    e. KDH's management advised Sonia Marksberry's co-workers not to talk with her and then interrogated them to determine whether they had talked to her;

    f. KDH's upper management instructed Mason Quick to keep an eye on Sonia Marksberry and to document her "every move";

    g. KDH's management told Sonia Marksberry that they would pay her commissions on all the deals she had secured if she would just quit;

    h. KDH scheduled Sonia Marksberry to work at the Owensboro lot by herself while Defendant's other salespersons from the Owensboro lot attended a manufactured-home show in Louisville.

  17. KDH's retaliatory conduct caused Ms. Marksberry to experience extreme anxiety and left her with no option but to resign from employment with KDH, so, on or about January 20, 2023, Ms. Marksberry resigned.

18. During Sonia Marksberry's tenure as an employee at KDH, she regularly recommended that KDH begin selling "tiny homes," which is a home that is less than 400 square foot and is different from the modular and mobile homes that KDH was already selling.

19. KDH's management, however, consistently "laughed off" this idea and told Sonia Marksberry that KDH would not sell "tiny homes."

20. Because Sonia Marksberry had an interest in selling "tiny homes," she formed a business called Integrity Homes and RVs, LLC and caused that business to purchase an existing recreational-vehicle repair business while Sonia Marksberry was still employed by KDH.

21. Ms. Marksberry intended for Integrity Homes and RVs, LLC to sell "tiny homes."

22. KDH's principals, including but not limited to Dustin Ewing, knew that Sonia Marksberry had formed a business and that she intended to sell tiny homes through that business.

23. After being constructively discharged from employment with KDH, Ms. Marksberry focused her energy on developing business for Integrity Homes and RVs, LLC, and, more specifically, focused her energy on getting that business ready to sell "tiny homes."

24. KDH and its principals, including Dustin Ewing, Daryl Stone, Mason Quick, and attorney Thomas Carroll, knew or should have known about Ms. Marksberry's new business and new or should have known that that business intended to sell "tiny homes."

25. Nonetheless, on or about March 11, 2023, KDH erected a sign in front of KDH's Owensboro sales lot stating: "TINY HOMES NOW AVAILABLE."

26. KDH has since admitted that Dustin Ewing—KDH's CEO and sole member—made the decision to display the "TINY HOMES NOW AVAILABLE" signage.

27. On information and belief, KDH did not erect a sign stating "TINY HOMES NOW AVAILABLE" in front of its lots in Paducah, Kentucky or Bowling Green, Kentucky—rather, it erected this sign only at the Owensboro lot.

28. On information and belief, KDH never sold any tiny homes at the Owensboro lot and never had any plans to sell any tiny homes at the Owensboro lot.

29. KDH and its principals, including Dustin Ewing, knew or should have known that Sonia Marksberry would see this sign, as her new business—i.e., Integrity Homes and RVs, LLC—was within the same general vicinity as KDH's Owensboro lot.

30. KDH and its principals, including Dustin Ewing, knew or should have known that erecting a sign stating "TINY HOMES NOW AVAILABLE" would greatly upset Ms. Marksberry and cause her to suffer extreme anxiety, stress, and emotional distress, especially since she regularly encouraged KDH to sell "tiny homes" during her employment with KDH but was always told no, and they therefore acted with negligence and/or reckless disregard toward Sonia Marksberry's mental health, physical health, and general well-being, when they erected the sign.

31. As a result of the extreme anxiety, stress, and emotional distress that she experienced as a result of the conduct of KDH and its principals, including Dustin Ewing, Sonia Marksberry was unable to sleep and she experienced other physical and mental health issues from March 11, 2023, through March 15, 2023.

32. On or about March 15, 2023, Sonia Marksberry was found dead at her home.

## COUNT I

33. Plaintiff realleges and reincorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

34. On August 8, 2022, Sonia Marksberry joined a lawsuit and claimed that Kentucky failed to properly pay her wages as required by Kentucky law.

35. On or about August 30, 2022, Defendant's management, including Dustin Ewing, Daryl Stone, Mason Quick, and Thomas Carroll, learned of Ms. Marksberry claim.

36. Almost immediately after learning that Ms. Marksberry had become involved in this case and was asserting wage and hour claims against KDH, KDH's management, including Dustin Ewing, Daryl Stone, Mason Quick, and its in-house attorney, Thomas Carroll, began retaliating against Ms. Marksberry and otherwise treating her differently.

37. Kentucky law prohibits an employer from discharging or discriminating against an employee who has made a complaint to her employer about her wages. KRS 337.990.

38. Kentucky law provides a private right of action for persons, like Ms. Marksberry, who are injured by an employer's violation of a wage-and-hour statute. KRS 446.070.

39. As a result of these retaliatory acts and others, Ms. Marksberry experienced emotional distress and was left with no option but to resign from her employment with KDH.

40. Because KDH retaliated against and constructively discharged Ms. Marksberry for making and pursuing wage and hour claims against Defendant, Ms. Marksberry is entitled to damages, including but not limited to lost wages and benefits, damages for emotional distress, and punitive damages. KRS 337.990; KRS 446.070.

## COUNT II

41. Plaintiff realleges and incorporates by references the allegations set forth in the preceding paragraphs as if fully set forth herein.

42. KDH and Ewing owed a duty to Sonia Marksberry to exercise reasonable care to not engage in activity or conduct designed to cause her injury, harm, or death.

43. KDH and Ewing also owed a duty to Sonia Marksberry to act with care and regard toward her mental health, physical health, and general well-being.

44. KDH and Ewing breached these duties by erecting a sign at KDH's Owensboro lot stating "TINY HOMES NOW AVAILABLE" with knowledge that Sonia Marksberry had opened a business in the same general vicinity as KDH at which she planned to sell tiny homes.

45. As a result of the actions of KDH and Ewing, Sonia Marksberry suffered extreme anxiety and emotional distress, and the extreme anxiety and emotional distress that Sonia Marksberry experienced as a result of the actions of KDH and Ewing is greater than a reasonable person could or should be expected to endure under the circumstances.

46. As a result of the KDH's and Ewing's negligent conduct, Sonia Marksberry experienced several physical symptoms of emotional distress and anxiety, including but not limited to panic attacks, difficulty breathing, difficulty sleeping, loss of appetite, and paranoia.

47. As a result of the actions of KDH and Ewing and the extreme anxiety and emotional distress that she experienced as a result, Sonia Marksberry died prematurely.

48. As a result of the actions of KDH and Ewing, Plaintiff is entitled to damages, including but not limited to funeral expenses, compensatory damages for pain and suffering and emotional distress, loss of enjoyment of life, wrongful death, destruction of earning capacity, punitive damages, attorney's fees, and all other damages allowable under Kentucky law.

## COUNT III

49. Plaintiff hereby reasserts and incorporates by reference all allegations set forth in the above numbered paragraphs as if fully set forth herein.

50. Ewing is or at all relevant times was the owner of KDH, and he made the decision to display the "NOW SELLING TINY HOMES" signage at KDH's Owensboro sales lot.

51. Ewing made the decision to display the "NOW SELLING TINY HOMES" sign at KDH's Owensboro sales lot for the purpose of inflicting emotional distress upon Sonia Marksberry or with conscious disregard of how that sign would impact Sonia Marksberry.

52. Ewing's act of causing the "NOW SELLING TINY HOMES" sign to be displayed at KDH's Owensboro sales lot was outrageous and intolerable under the circumstances.

53. As a result of Ewing's intentional or reckless conduct, Sonia Marksberry experienced severe emotional distress and anxiety along with several physical symptoms of severe emotional distress and anxiety, including but not limited to panic attacks, difficulty breathing, difficulty sleeping, loss of appetite, and paranoia

54. As a result of the extreme anxiety and emotional distress that Sonia Marksberry experienced due to Ewing's intentional and reckless conduct, Sonia Marksberry died prematurely.

55. As a result of the actions of Ewing, Plaintiff is entitled to damages, including but not limited to funeral expenses, compensatory damages for pain and suffering and emotional distress, loss of enjoyment of life, wrongful death, destruction of earning capacity, punitive damages, attorney's fees, and all other damages allowable under Kentucky law.

## COUNT IV

56. Plaintiff hereby reasserts and incorporates by reference all allegations set forth in the above numbered paragraphs as if fully set forth herein.

57. Defendant's conduct as outlined herein warrants an award of punitive damages, as Defendant's misconduct was intentional or constitutes a gross deviation from the standard of care.

58. **WHEREFORE**, Plaintiff respectfully requests as follows:

    a. Attorney fees and costs;

    b. Damages for emotional distress;

  c.  Damages for funeral and burial expenses

  d.  Damages for the destruction of Sonia Marksberry's earning capacity;

  e.  Damages for loss of enjoyment of life;

  f.  Damages for lost wages and benefits;

  g.  Punitive damages;

  h.  Trial by jury;

  i.  For all other damages to which they may be entitled.

This the 27th day of March, 2024.

                KERRICK BACHERT PSC
                2445 Nashville Road
                P. O. Box 9547
                Bowling Green, KY  42101
                Phone - 270-782-8160
                Fax – 270-782-5658
                tkerrick@kerricklaw.com
                athomason@kerricklaw.com

                */s/ Thomas N. Kerrick*
                Thomas N. Kerrick
                Alex Thomason
                *Attorneys for Plaintiff*